## LEWIS v. BRIGGS.

### Opinion delivered December 10, 1906.

REAL ESTATE BROKER—WHEN COMMISSION EARNED.—Where a landowner agreed to pay his broker the residue of the purchase money of the land after .realizing a sum named, and the purchaser failed to pay the pur-

chase price except a small sum, less than the sum so named, the broker was not entitled to recover his commission unless the landowner was to blame for the nonpayment of the purchase price.

Appeal from Lonoke Circuit Court; *George M. Chapline,* Judge; affirmed.

### STATEMENT BY THE COURT.

H. L. Briggs and his wife, Blanche W. Briggs, were in January, 1905, the owners of 320 acres of land in Lonoke County. George C. Lewis, an attorney at law and real estate dealer, undertook to sell this land for them. In pursuance of this purpose, he induced A. J. Cashburn and W. H. Richardson to enter into the following contract with Briggs and wife:

"Memorandum of agreement made and entered into this 19th day of January, 1905, between Henry L. Briggs and Blanche Briggs, parties of the first part, and A. J. Cashburn and W. H. Richardson, parties of the second part.

"Witnesseth: That said first parties have this day sold and agreed to convey to said second parties the east half of section 24, Tp. 2 N., R. 7 W., Lonoke County, Arkansas, for the sum of $9600; same to be paid as follows: $400 cash in hand. Deed to second parties to be deposited in Dairyman Bank, Carlisle. Arkansas, at once, and abstract of title to said land showing good title in said first parties to be furnished at once. As soon as said title shall be found good in said first parties or their assigns, second parties shall at once forward $3,000 additional to said bank for said first parties. The balance of purchase price, $6,200, said second parties agree to pay on March 1, 1905. If said title is not found good, said $400 shall be at once returned to said second parties, and all rights under this contract shall become void.

"Witness our hands this 19th day of January, 1905. Executed in duplicate.

"A. J. CASHBURN,
"W. H. RICHARDSON,
"HENRY L. BRIGGS AND BLANCHE
"BRIGGS,
    "By H. W. GUTHRIE."

"We hereby agree to above contract. Out of this price we are to receive $8,000 net to us. The balance of purchase price, $1,600, is to be paid to Geo. C. Lewis as commission for sale of said land. This 20th day of January, 1905.

"H. L. BRIGGS,
"B. W. BRIGGS."

A deed was executed by Briggs and wife to Cashburn and Richardson, conveying the 320 acres land described but excepting the railroad right of way across it, which contained about 8 acres. They placed this deed in the hands of H. W. Guthrie, an officer of the Dairyman Bank of Carlisle, to be delivered upon the payment of the price. Afterwards Guthrie received the following letter in reference to the land which explains itself:

"Ferris, Ill., February 6, 1905.
"H. W. GUTHRIE, Carlisle, Arkansas.

"Dear Sir: A. J. Cashburn and W. H. Richardson request me to write you concerning their land deal they made some time ago in January. They state that they purchased the one-half section for what it actually measured at $30 per acre, and they say they have several witnesses to prove it. They also say if you do not want to sell as per written and verbal contract to please return money paid down, viz.: $400, and the deal is off. The lawyers here can tell nothing about those abstracts, so it is possible you can not give a good title to said land.

"Let me hear from you soon.

Yours,
"F. N. CASHBURN.

"After you have surveyed it, they will send a surveyor from here to see that it is surveyed right.

"Dictated by W. H. Richardson and A. J. Cashburn. Please hand to Briggs Bros."

In response to this letter Guthrie notified the parties that Briggs and his wife would not reduce the price on account of the right of way, that he wanted $8,000 net to him.

Still later Guthrie received the following letter:

"Ferris, Ill., February 21, 1905.

"H. W. Guthrie:

Dear Sir: Yours of 17th at hand, and we have decided not to purchase the farm at all. I would like to have had it, but Mr. Richardson's wife would not permit him to mortgage his property to get the money, so consequently the deal is off, and we are loser $200 each, unless you are honest enough to return it, or a part of it. Perhaps I will be down again soon, and next time I will purchase for myself, then I will know what I am doing. I am, .

"Yours truly,

"A. J. Cashburn."

Guthrie notified Briggs of the receipt of this letter, and Briggs withdrew the deed from the bank.

Afterwards Lewis, the agent through whom the sale was negotiated, brought this action against Briggs and wife to recover the $1,600 which he was to receive from the proceeds of the sale.

On the trial there was a verdict for the defendants, and Lewis appealed.

*Trimble, Robinson & Trimble,* for appellant.

1. The court erred in charging the jury, in effect, that appellant undertook that the purchasers would buy the land at $9,600, and that, unless they paid for the land, appellant could not recover.

2. In failing to show good title to the land, and in refusing to reduce the price proportionately for the right of way, appellees were in default. The deed tendered excepted the right of way, hence it did not comply with their undertaking, and the court erred in refusing to instruct that such a deed was not a compliance with the contract.

3. Appellant was entitled to his commission if he found purchasers ready, willing and able to take and pay for such part of the land as appellees had title to, and they refused to convey such as they had title to for a consideration proportionately reduced. 15 Col. 142.

4. A real estate broker is entitled to his commission, even though it is payable out of the purchase price, if the seller fails

or refuses to make good title. Appellant was not responsible for the state of appellees' title. 51 Ill. 206; 25 Cal. 81; 83 Cal. 628; 42 S. W. 647; 43 S. W. 929; 20 Ore. 454; 103 Cal. 160; 57 Cal. 225; 90 Tenn. 77. The purchasers being financially responsible, the contract was enforcible, and appellant, having produced them, did all that he assumed, or was required, to do. 43 L. R. A. 604; 44 L. R. A. 593; 5 Current Law, 452, note 44-47; 3 *Id.* 543, n. 18; 205 Pa. 254; 5 Colo. 174.

*Fulk, Fulk & Fulk,* for appellees.

1. It is not error to refuse instructions asked for, where the court has already given instructions covering the same questions. 28 Ark. 8; 51 Ark. 324; 34 Ark. 649; 58 Ark. 472; 52 Ark. 180; 59 Ark. 143.

2. The commission was dependent upon the sale of the land, and there was no sale—no transfer of possession by deed, nor actual livery of seizin. The payment of the $400 on purchase price was not a sale. 70 Ark. 351. Moreover, appellees were to receive *first,* $8,000, net to them, and appellants commission was to consist of the "balance of purchase price, $1,600." Until appellees received the money due them, there was nothing due to appellant under the contract.

3. A broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his, and the reward comes only with his success. 83 N. Y. 378.

The compensation of a real estate agent is dependent upon his procuring a purchaser ready, willing and *able* to make the purchase on the terms fixed by the principal, and he must show affirmatively that he has done so before he can recover. 80 Ark. 183; 41 Mo. App. 118; 13 Bush (Ky.), 358; 20 How. 221; 21 Barb. (N. Y.), 145; 43 *Id.* 529; 25 Cal. 76; 21 Pac. 98; 26 Mo. App. 289; 29 Mo. App. 421; 34 *Id.* 273; 36 *Id.* 15; 61 N. Y. 445; 63 N. Y. 445. See also, 84 Me. 148; 23 Atl. 1019.

R̲IDDICK, J., (after stating the facts.) This is an appeal from a judgment refusing compensation to plaintiff, Geo. C. Lewis, for negotiating an agreement to purchase land. The contract of sale is set out in the statement of facts. The addendum thereto represents the contract made between the plaintiff and defendants. The language of it is: "We agree to above contract.

*ℓ*

Out of this price we are to receive $8,000 net to us. The balance of purchase price $1,600 is to be paid to Geo. C. Lewis as commission for sale of said land." This was signed by Briggs and his wife.

It will be noticed that under this agreement $8,000 net was to be paid to Briggs and wife, and that Lewis was to receive only the balance left after the payment of this $8,000 to Briggs and his wife. If the contract had been carried out in good faith by both parties, Lewis could have claimed nothing until Briggs and wife had received the $8,000 which was to be paid to them. But it is undisputed that only the $400 referred to in the contract as having been paid in cash was ever received by the defendants. They have never received the $8,000 which they were entitled to under the contract, for it was never paid, and there is no contention that any portion of the $1,600 which Lewis was to receive has ever been paid to or received by defendants. Under the terms of this contract, Lewis does not make out a case for recovery against the plaintiff by showing that he secured a contract with solvent parties to purchase the land. He must under this contract show either that defendants have received some part of the balance of the purchase money to which he was entitled or that the parties who agreed to purchase were ready, willing and able to perform their part of the contract, and that they were prevented from doing so by the default or failure of the defendants to perform their part of the contract.

Now, it is certain that the parties who had agreed to purchase afterwards declined to do so. Whether their failure was caused by the fact that defendants refused to make any reduction from the price on account of the right of way which the railway company owned or claimed across the land, or whether it was due to other causes, is not made very clear by the evidence, though the case turned entirely on that point. But it seems to us that the question on which the case turned was fairly and clearly presented to the jury by the instructions of the court, and that the court did not err in refusing those asked by plaintiff. To return a verdict in favor of the defendants under the instructions given, the jury must have found that the act of the purchasers in failing to pay the purchase price was not due to any fault of the defendants. These purchasers were nonresidents, and there was

nothing in the contract that required the defendants to bring suit against them on their failure to pay. Under this contract, so long as the purchase price was unpaid, and so long as defendants were not to blame for its nonpayment, they are not liable.

We are therefore of the opinion that the judgment should be affirmed, and it is so ordered.