### VAUGHAN *v.* ODELL & KLEINER.

#### Opinion delivered June 6, 1921.

1. BROKERS—QUESTION FOR JURY.—In an action by a broker for his commission for procuring a purchaser of timber, which the owner refused to convey to the purchaser procured, *held* that it was error to direct a verdict for defendants where the evidence would have sustained a verdict for the plaintiff.

2. BROKERS—RIGHT TO COMMISSION—DEFENSE.— Though a contract employing a broker to sell timber stipulated that his commission depended upon the completion of the contract, the owners of the timber can not set up the failure to complete the contract as a defense to the broker's claim for his commission where such failure was due to their refusal to carry out the contract by executing a deed to the purchaser.

3. ESTOPPEL—PREVENTING PERFORMANCE.—He who prevents a thing from being done shall not avail himself to his own benefit of the nonperformance which he has occasioned.

Appeal from Arkansas Circuit Court, Northern District; *W. B. Sorrells,* Judge; reversed.

*James E. Hogue* and *J. E. Ray,* for appellant.

The court erred in directing a verdict for defendants. 78 N. E. 106, 191 Mass. 483, was a different case and does not apply here. See 111 N. E. 37, a case similar to this. 87 Ark. 506 is in point and is decisive of this.

Where a real estate broker contracts to produce a purchaser who shall actually buy, he has performed his contract by producing one financially able to buy and pay and with whom the owner actually makes an enforcible contract, he is entitled to his commission. The failure to carry out the contract, even if the default be that of the purchaser, does not deprive the broker of his right to his commission. 44 L. R. A. 593 and note.

The fact that appellant was postponed in his right to receive the commissions until the purchase money was paid could not relieve appellee of the duty of collecting the money and paying appellant his commissions when collected. By dismissing his suit in chancery to enforce the contract he immediately became liable to appellant for the commissions.

This case can not be differentiated from *Boysen* v. *Frink,* 80 Ark. 254. See, also, *Hill* v. *Jebb,* 55 Ark. 574.

The allegation in the answer that the purchasers procured by appellant were not financially able to carry out their contract and unable to purchase the timber, and did not purcahse it, is, of course, to be treated as denied by appellant. C. & M. Digest, § 1231. On this point appellees held the affirmative of the issue, and the burden was on them, but the evidence shows that the purchasers were financially able to pay for the timber.

Upon the evidence it was error to direct a verdict for appellees.

*John L. Ingram,* for appellees.

As the timber was never sold and as the common fund out of which appellees were to receive their fees or pay and appellant his compensation was never created, the judgment is right. Appellant's interest was in the *proceeds of the sale,* which was never made, and appellant failed in his part of the undertaking. Walker on Real Estate Agency, § 456; 78 N. E. 196; 81 Ark. 96.

HART, J. T. L. Vaughan brought this suit against Odell & Kleiner in the circuit court to recover a broker's commission for effecting a sale of certain timber belonging to the defendants.

In the circuit court a verdict was directed for the defendants, and from the judgment rendered upon the verdict the plaintiff has duly prosecuted an appeal to this court.

T. L. Vaughan was a witness for himself. According to his testimony, he made a contract for Odell & Kleiner to sell the timber on a thousand acres of land which they owned in Arkansas County, Ark. They gave him a price of $6 per acre for the timber, and Vaughan was to get all over that price for his commission. Odell & Kleiner did not think that he could get over $7 an acre for the timber. Vaughan sold the thousand acres of timber of Odell & Kleiner to Carver & Russell of West Plains, Mo., for $8 an acre, and a written contract for the purchase of the timber was duly signed by Carver & Russell, and they deposited $1,000 in a bank at West Plains to guarantee the performance of their contract to purchase the timber. Vaughan then went to Stuttgart and reported to Odell & Kleiner what he had done. They told him that there was another forty acres of timber which was not included in the contract.

The contract was subsequently modified to include the forty acres, and some changes were also made in the time of making some of the payments of the purchase money. The total purchase price under the modified contract was $8,320, of which $4,000 was to be paid in cash when the deed was signed and of the remainder $2,000 was to be paid in ninety days and $2,320 in four months. It was also agreed that the deposit of $1,000 formerly made in the bank at West Plains should be applied on the first payment. Subsequently Vaughan made a contract to sell the timber for Carver & Russell to R. R. McIntosh for $11,520. Under this contract McIntosh was to pay the $7,320 due from Carver & Russell to Odell & Kleiner. When Odell & Kleiner found out that Carver & Russell had made a contract to sell the timber for more than they had paid for it, they refused to execute a deed to the timber to Carver & Russell under their other contract. When the contract was originally entered into between Carver & Russell and Odell & Kleiner by

Vaughan, the latter made an investigation of the solvency of Carver & Russell at the bank in West Plains and found that they were financially able to carry out the contract on their part.

On cross-examination ,Vaughan admitted that he had brought suit against Carver & Russell to recover his commission, and that his complaint in that case states that Carver & Russell "have no property in this State from which the money due herein could be made, except that which comes from the interest which they may have from the property herein described, and are wholly insolvent." Vaughan explained that what he meant by that was that Carver & Russell had no property in this State, except the timber which they had contracted to purchase from Odell & Kleiner, and which the latter had refused to convey to them.

R. R. McIntosh was a witness for the plaintiff, and testified that he made a contract with Vaughan to purchase the timber in question for $11,520, of this amount he was to pay Odell & Kleiner $7,320 in cash; that he was anxious to buy the timber, and was able to pay for it at the time he entered into a written contract for the purchase of it as above stated.

E. C. Carver was also a witness for the plaintiff. According to this testimony, Odell & Kleiner gave him an extension of time within which to pay for the timber, and, before the extension of time had expired, Vaughan made a contract with R. R. McIntosh for them to sell him the timber for $11,520. The contract provided that he was to pay for them to Odell & Kleiner $7,320 of this amount. They were prevented from carrying out this contract because Odell & Kleiner refused to convey the timber to them. Subsequently McIntosh purchased the timber from another party for $16,500 and sold it for $19,000.

Some evidence was adduced by the defendants tending to show that Carver & Russell had failed to perform the contract on their part, and that they were unable to carry out their contract for the purchase of the timber without borrowing money with which to pay the pur-

chase price. Other evidence tended to show that the contract of purchase had been abandoned before they made a contract through the plaintiff to sell the timber to R. R. McIntosh.

In this state of the record the court erred in directing a verdict for the defendants. The evidence for the plaintiff warranted the jury in finding for him. According to the evidence adduced in his behalf, he was the agent of the defendants to sell the timber for them, and was to receive as his commission all that he might sell the timber for above $6 per acre. In other words, under the original contract, he sold to Carver & Russell a thousand acres of timber at $8 per acre and under the modified contract he sold them one thousand and forty acres at $8 per acre, amounting in the aggregate to $8,320. He was to have all over $6 per acre that he could get for the timber as his commission. The original contract for the sale of the timber to Carver & Russell was in writing. Odell & Kleiner made some objections to it because it did not include an additional forty acres of timber which was in the tract they intended to sell. The contract was modified so as to include this tract, and the modified contract was also in writing. This was a valid and binding contract, and, according to the evidence of the plaintiff, the purchasers were able to complete the contract and were anxious to do so. They were able to pay the purchase money upon the execution and delivery to them of a timber deed, and the defendants refused to execute such a deed.

It is true that, under the contract between the plaintiff and the defendants, the sale was to be completed and the plaintiff was to receive as his commission any excess over $6 an acre which the defendants might receive for the purchase price of the timber. However, according to the evidence for the plaintiff, the defendants, by their own misconduct in refusing to execute a timber deed to Carver & Russell, prevented the fulfillment of the contract on their part, and the defendants can not set up their own refusal to carry out the contract by executing

a timber deed as a ground of defense to the plaintiff's claim for his commission.

It is a well settled and sound principle of law that he who prevents a thing from being done shall not avail himself to his own benefit of the nonperformance which he has occasioned. We think this rule was recognized by the Supreme Court of Massachusetts in *Munroe* v. *Taylor,* 78 N. E. (Mass.) 106. In that case the broker was to receive all over a certain stipulated price as his commission. He sold the land at a price largely in advance of the stipulated amount and entered into a binding contract for the sale of the property. In that case it did not appear that at any time the defendant had refused to make a proper deed of conveyance. It was the plaintiff's contention that, having found a customer who became bound to buy, his commission had been earned. The court held that he was entitled to a commission only in the event of procuring the consummation of the sale, and not on procuring the execution of a contract of sale which was never performed. He failed to make out his case by not introducing evidence tending to show that the defendant had wrongfully refused to carry out the contract upon his part. This is clearly shown by the concluding part of the opinion. It reads as follows:

"What the plaintiff really undertook was, not only to find a purchaser at a fixed price, but to effect a sale, which meant a payment of that price, and, this having been done, he would have earned the excess, but, until the consideration became payable, or the defendant refused to convey, he could not demand any remuneration, or maintain an action for breach of the contract."

The rule was also recognized by this court in *Lewis* v. *Briggs,* 81 Ark. 96. In that case the owner of the land was to receive $8,000 net, and the balance of the purchase price was to be paid to the broker as a commission for the sale of the land. The court held that under the terms of the contract the broker did not make out a case for recovery against the owner by showing that he secured a contract with solvent parties to purchase the land. In discussing the question the court said:

"He must under this contract show either that defendants have received some part of the balance of the purchase money to which they were entitled, or that the parties who agreed to purchase were ready, willing and able to perform their part of the contract, and that they were prevented from doing so by the default or failure of the defendants to perform their part of the contract."

In concluding the opinion the court said that under the contract, so long as the purchase price was unpaid, and so long as the defendants were not to blame for its nonpayment, they were not liable. This was a clear recognition of the rule as we have stated it. Upon the principle stated in these cases, the broker might have a claim for his services if the sale had failed through the fault of the defendant.

As above stated, in the case at bar, it is fairly inferable from the plaintiff's testimony that Carver & Russell were solvent and were able to carry out the contract on their part, and that they were anxious to do so, but were prevented by the failure of the defendants to execute the timber deed.

It follows that for the error in directing a verdict for the defendants the judgment must be reversed and the cause will be remanded for a new trial.