RIGGS *v.* BROCK.

4-7681                                  189 S. W. 2d 367

Opinion delivered June 18, 1945.

*Sullins & Perkins,* for appellant.

*O. E. Williams,* for appellee.

HOLT, J. Appellee, D. O. Brock, sued appellants for a real estate commission which he alleged they had agreed to pay and which he had earned. Appellants denied liability. A jury was impaneled to try the cause but at the close of all the testimony, each side requested a directed verdict, whereupon the trial court withdrew the case from the jury and rendered judgment for appellee in the amount of $425, the amount for which he sued, This appeal followed.

Appellants owned the property here involved in Springdale, Arkansas, which they listed with appellee for sale at a price of $8,500. Appellee interested F. A. Achenbach and his wife, Grace Achenbach, of Hardtner, Kansas, in this property. They came to Springdale, were shown the property by appellee and on the following day entered into a written purchase agreement with appellants, the material portions of which are hereinafter set out.

At the request and suggestion of appellee, the parties went to Fayetteville and said agreement was prepared by Mr. J. R. Greer, an abstracter, selected and chosen by appellee. Appellee testified: "Q. What did you tell Mr. Greer when you went in there? A. I went in and told Mr. Greer we wanted a contract on the sale of this place and I told him—we were all there seated around there at the table—it was $8,500, the price of the place. We told him they had agreed on six weeks, I believe it was, to give possession and then he was to pay the rest of the money over and I told Mr. Greer that Mr. Riggs would owe me $425; so they come there and made the contract and they signed it and looked at it and read it; I didn't see it or read it, I thought it was all right."

The contract or agreement was as follows: "This agreement made this 31st day of March, 1944, by and between L. M. Riggs and Myrtle Riggs, husband and wife, first parties, and F. A. Achenbach and Grace Achenbach, husband and wife, second parties, witnesseth: The first parties have this day bargained and sold to the second parties, upon the terms and conditions hereinafter set forth, the following described real estate, to-wit: (Then follows a description of the property.) The purchase price shall be eighty-five hundred and no/100 ($8,500) dollars, of which, the sum of one thousand and no/100 ($1,000) dollars is paid cash in hand, the receipt of which is acknowledged by the first parties and the residue of seventy-five hundred and no/100 ($7,500) dollars is to be paid six weeks after date when said first parties are to deliver possession of said premises to the second parties. It is agreed and understood that said first parties have executed a good and sufficient warranty deed conveying said real estate to the second parties and have placed said deed in escrow in the First State Bank, of Springdale, Arkansas, to be delivered to the second parties together with an abstract showing good legal title to said lands, free and clear of all liens, taxes or encumbrances, on or before six weeks from the date of this contract upon the payment of the sum of seventy-five hundred and no/100 ($7,500) dollars, balance of the purchase price, by said second parties.

"It is further understood and agreed that said parties of the first part shall deliver possession of said premises to the second parties upon the delivery of said deed and abstract within six weeks from the date hereof, it being understood that said first parties shall remain in the possession of said premises until the expiration of said period, at their option, and in the meantime that said first parties shall not remove or permit to be removed from said premises any of the shrubs, trees or plants now growing on said premises. It is further understood and agreed that said first parties shall pay to D. O. Brock a real estate brokerage or commission of four hundred twenty-five ($425) dollars, to be paid over and delivered to him by said first parties, or the escrow bank, upon the

payment of the residue of the purchase price as hereinbefore set out and stipulated.

"In the event of the failure of said second parties to pay said residue of the purchase price within said period of six weeks or upon delivery of the possession of said premises, then this contract to be null and void, at the option of the first parties and said cash payment shall be forfeited to the first parties as liquidated damages. This contract signed in triplicate the day herein first above written. (Signed) L. M. Riggs, Myrtle Riggs, first parties. F. A. Achenbach, Grace Achenbach, second parties."

Following the execution of this contract, the Achenbachs returned to Kansas and about six weeks thereafter wrote appellee to the effect that they were not going through with the deal and forfeited to appellants their down payment of $1,000. Appellee then demanded his commission, which appellants refused to pay.

We think appellee, Brock, is clearly bound by the provisions of the above contract. While he did not sign it, he it was, who had it prepared by Mr. Greer, a friend upon whom he relied and in whom he reposed great confidence. He understood its terms. In these circumstances, the contract was in effect an embodiment in writing of appellee's oral understanding with appellants, and he is as much bound by it as though he had signed it.

We have many times held that before a real estate broker would be entitled to a commission, he must produce a purchaser able, willing and ready to buy upon the terms stipulated.

Here the terms of the agreement, *supra*, are plain and unambiguous. It was there provided and "agreed that said first parties (appellants, Riggs and wife) shall pay to D. O. Brock a real estate brokerage or commission of four hundred and twenty-five ($425) dollars, . . . upon the payment of the residue of the purchase price as hereinbefore set out and stipulated." The residue of the purchase price was $7,500. It was further provided, however, that "in the event of the failure of said second par-

ties (the Achenbachs) to pay said residue ($7,500) of the purchase price within a period of six weeks . . ., then this contract shall be null and void at the option of the first parties (appellants here) and said cash payment ($1,000) shall be forfeited to the first parties as liquidated damages."

The purchasers, Mr. Achenbach and wife, failed and refused to pay the residue of the purchase price, $7,500, within the six weeks period and accordingly appellants, as was their right under the contract, elected to declare it "null and void" and appropriated the $1,000 earnest money which was, under the contract "forfeited to the first parties (appellants) as liquidated damages."

The rule announced by this court in the case of *Lewis* v. *Briggs,* 81 Ark. 96, 98 S. W. 683, is controlling here. In that case, Lewis, a real estate dealer undertook to sell a tract of land owned by Briggs and wife, and in pursuance of this purpose, induced Cashburn and Richardson to enter into a written contract with Briggs and wife for the sale of their property for $9,600, payable part cash and part on time. The contract was signed by Briggs and wife, the owners, and the purchasers. It was not signed by Lewis. There was an addendum to the contract as follows: "We hereby agree to above contract. Out of this price we are to receive $8,000 net to us. The balance of purchase price, $1,600, is to be paid to Geo. C. Lewis as commission for sale of said land. This 20th day of January, 1905." Signed, "H. L. Briggs, B. W. Briggs." The deal was never consummated. Only the $400, referred to in the contract, was actually paid to the owners. In that case, this court said: "They (the owners) have never received the $8,000 which they were entitled to under the contract, for it was never paid, and there is no contention that any portion of the $1,600 which Lewis was to receive has ever been paid to or received by defendants. Under the terms of this contract, Lewis does not make out a case for recovery against the plaintiff by showing that he secured a contract with solvent parties to purchase the land. He must under this contract show either that defendants have received some

part of the balance of the purchase money to which he was entitled or that the parties who agreed to purchase were ready, willing and able to perform their part of the contract, and that they were prevented from doing so by the default or failure of the defendants to perform their part of the contract. . . . These purchasers were nonresidents, and there was nothing in the contract that required the defendants to bring suit against them on their failure to pay. Under this contract, so long as the purchase price was unpaid, and so long as defendants were not to blame for its nonpayment, they are not liable."

So here, appellee failed to produce a purchaser who was ready, able and willing to purchase under the terms of the contract and, since appellants were not to blame for the failure of the Achenbachs to buy, is therefore not entitled to recover any amount in this cause. It was not the fault of appellants that the sale was not made, and, as in the case, *supra,* the purchasers here were nonresidents, and there was nothing in the contract that required appellants to bring suit against the purchasers on their failure to purchase.

Appellee says that "the record does not show that Judge Trimble, the judge who tried the case, has died, become insane, or for other cause become incapacitated to sign the bill of exceptions, there is no authority for anyone else to sign it, and it should be stricken out on our motion, heretofore filed, which we renew at this time."

The record reflects that the cause was tried before Judge J. W. Trimble October 25, 1944, judgment rendered December 4, 1944, and the bill of exceptions signed by Judge Ted B. Coxsey March 2, 1945. This court takes judicial notice of the records in the office of the Secretary of State, which reflect that Judge Coxsey was commissioned judge of the Fourth Judicial Circuit of Arkansas, which embraces Washington county, on January 10, 1945, in compliance with the following order from the Governor: "To the Secretary of State: Little Rock, Ark., 1-10-1945. You will issue commission to Ted P. Coxsey, Berryville as circuit judge of the 4th Judicial

Circuit to fill vacancy caused by resignation of Judge J. W. Trimble, resigned. $15 attached to pay required fee. Ben Laney, Governor.''

Judge Trimble was elected to the House of Representatives of the United States at the general election in 1944. He entered upon the duties of his office in the Congress of the United States January 10, 1945, at which time he ceased to be judge of the Fourth Circuit.

The Congressional Record reflects that Judge Trimble on January 10, 1945, ''appeared at the bar of the House and took the oath of office.'' We take judicial notice of the journals of the two Houses of Congress, and that part of the Congressional Record showing official acts. In 23 C. J., page 102, (§ 1902) i.—(1), the text-writer says ''the journals of the two houses of Congress are judicially noticed by both federal and state courts.'' In support of the text, there is cited a decision by the Supreme Court of Oregon, *Byers* v. *Wa-Wa-Ne, et al.,* 169 Pac. 121, where it is said: ''We can take judicial knowledge of . . . the journals of Congress and the Congressional Record showing the steps which finally led to the enactment of this statute.'' Article VII, § 18 of the Constitution of Arkansas provides that ''the judges of the circuit courts . . . shall not be allowed any fees or perquisites of office, nor hold any other office of trust or profit under this state, or the United States.''

It is obvious that on March 2, 1945, when Judge Coxsey signed the bill of exceptions here, he was the duly qualified and acting circuit judge. Judge Trimble had ceased to be the judge of the Fourth Circuit when he resigned January 10, 1945, and on the same day qualified and assumed his duties as a member of the House of Representatives in Washington, D. C. In these circumstances we hold that when Judge Coxsey signed the bill of exceptions, in the absence of a contrary showing, Judge Trimble was incapacitated within the meaning of § 1546 of Pope's Digest and accordingly Judge Coxsey, his successor, was authorized to sign the bill of exceptions. The official act of Judge Coxsey in signing the bill of exceptions creates a presumption, *prima facie,*

that Judge Trimble was incapacitated; and that presumption has not been overcome. Section 1546 of Pope's Digest provides: ". . . Where the judge who presided at any trial shall die, become insane or for any other cause become incapacitated before he has signed the exceptions, his successor in office shall allow, or correct, and sign said exceptions."

In the recent case of *Fisher* v. *State*, 206 Ark. 177, 174 S. W. 2d 446, this court approved the rule announced in 20 Am. Jur., p. 99, as follows: "The rule formerly prevailed that an appellate court would not judicially notice the personnel of a lower court at a certain time, but the modern tendency of the courts is to the contrary. An appellate court will now generally take cognizance of the date on which a person took office as a judge of an inferior tribunal, his term of service, and the date on which he ceased to be such a judge, whether his connection was terminated by resignation, death, or expiration of the term for which he was chosen," and further said: ". . . We take judicial cognizance of those records required by law to be maintained in the office of the Secretary of State. *Kaufman & Co.* v. *Stone*, 25 Ark. 336; *McCrary* v. *Schenebeck*, 191 Ark. 698, 87 S. W. 2d 572. The Secretary of State's records reflect accurately the personnel of the judiciary of the state."

We do not think the holding of this court in *O'Neal* v. *State*, 98 Ark. 449, 136 S. W. 936, on which appellee strongly relies, is in conflict with our holding here. We, therefore, hold that appellee's contention that the bill of exceptions is not properly before us is untenable.

For the error indicated, the judgment is reversed, and it appearing that the cause has been fully developed, it is dismissed.