HOLLOWAY *v.* McARTHUR.

5-568

274 S. W. 2d 474

Opinion delivered January 17, 1955.

*McMillen, Teague & Coates,* for appellant.

*Martin, Dobbs & Kidd,* for appellee.

MINOR W. MILLWEE, Justice. On February 18, 1953, appellant executed an "Exclusive Listing Contract" for a period of three months with appellee, a Little Rock real estate broker, for the sale of appellant's home in Cammack Village, Arkansas. Appellant was to pay appellee a commission of 5% of the selling price of $9,000. Other terms of the listing contract were that appellant should receive cash for his equity in the property and the buyer assume the balance of $6,572.35 owing Prudential Insurance Company, mortgagee.

On May 18, 1953, the last day of the three months term, appellee submitted to appellant a written "Offer and Acceptance" signed by Norman E. Holcomb, Jr., another real estate broker and former business associate of appellee. Under the terms of this proposal Holcomb was to pay $1,200 cash and the balance of $7,800 conditional upon the procurement of an F.H.A. loan in that amount. Appellant refused the offer. The testimony is in sharp dispute as to whether the refusal was based on appellant's insistence upon cash for his equity and because he was not willing to have his property tied up longer in the procurement of an F.H.A. loan, as he stated,

or, because appellant's wife had changed her mind about selling the property, as appellee testified. Whether the property was eligible for an F.H.A. loan of $7,800 was also speculative under the evidence.

Upon appellant's refusal to pay the demand for a 5% commission, appellee brought this action for breach of the listing contract. Trial resulted in a verdict and judgment in appellee's favor for $450.

We concur in the contention that the trial court erred in refusing to direct a verdict for appellant at the conclusion of the evidence. In cases of this kind we have adhered to the rule that a broker is not entitled to a commission until he has procured a purchaser ready, able and willing to buy upon the terms stipulated. *Riggs* v. *Brock,* 208 Ark. 1050, 189 S. W. 2d 367. Hence if a broker's authority to sell is limited to a particular named person, he is not authorized to sell to another person. *Peebles* v. *Sneed,* 207 Ark. 1, 179, S. W. 2d 156. See, also, *Earls* v. *Long,* Law Rep., Oct. 18, 1954, 271 S. W. 2d 784.

The applicable rule is more elaborately stated in 8 Am. Jur., Brokers, § 176, as follows:

"Where a broker instead of procuring a person who is ready, able, and willing to accept the terms his principal authorized him to offer at the time of his employment, procures one who makes a counter offer more or less at variance with that of his employer, the latter is at liberty either to accept the proposed party upon the altered terms or to decline to do so. If he accepts he is legally obligated to compensate the broker for the services rendered, but if he refuses he incurs no liability therefor. In other words, if the principal does not see fit to modify his original proposals the broker can lay no claim to his commissions until he produces a person who is ready, able, and willing to accept the exact terms of his principal. This is true even though there is but a slight variance between the contract tendered by the broker and that authorized by his employer. Thus if the person produced by a broker is willing to purchase at the price set by the employer of the latter but is not willing

to pay such price in the exact manner prescribed in the broker's contract of employment the latter is not entitled to his commissions." See, also, 12 C. J. S., Brokers, § 86 a.

Under these principles a broker obviously does not earn his commission by procuring a purchaser who is willing to take the property at the specified purchase price, but tenders a smaller cash down payment than that stipulated in the listing contract. There are many cases from other jurisdictions to this effect collected in the Annotation in 18 A. L. R. 2d 378. Among these are: *F. L. Allison & Co.* v. *McMath Plantation Co.,* 29 Ga. App. 414, 115 S. E. 916; *Clark* v. *United Ben. Life Ins. Co.* (Tex. Civ. App.) 62 S. W. 2d 633; *Crump* v. *Brentner,* 53 Nev. 156, 295 Pac. 441; *Bateman* v. *Richard,* 105 Okla. 272, 232 Pac. 443.

Here it is undisputed that appellant had an equity of at least $2,427.65 in the property which he was to receive in cash under the plain terms of the listing contract. Holcomb's offer of $1,200 in cash clearly did not comply with the terms of the contract, but amounted to a counter offer which appellant was at liberty to accept or decline. Since the counter proposal represented a material variance from the terms of the listing contract, the reasons or motives prompting appellant's refusal become immaterial.

In support of the judgment appellee now urges for the first time that appellant waived the discrepancy in the terms of the listing contract and Holcomb's counter offer by basing his refusal to accept the latter on the sole ground that his wife had changed her mind about selling the property. It is sufficient to say that waiver was not an issue in the trial court and may not be raised for the first time here. The case was submitted to the jury solely on the question of whether appellee produced a purchaser ready, willing and able to buy upon the terms set out in the listing contract. Under the undisputed facts he did not do so. The judgment is accordingly reversed, and the case remanded with direction to dismiss the complaint of appellee.