353 P.2d 1022

William W. BISHOP, Appellant,

v.

A. W. NORELL, doing business as Al Norell Company Realtors, Appellee.

No. 6716.

Supreme Court of Arizona.

June 30, 1960.

C. A. Muecke and Darrell R. Parker, Phoenix, for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton and Joseph E. McGarry, Phoenix, for appellee.

JOHNSON, Justice.

Appeal by defendant-seller from a summary judgment entered in plaintiff's action to recover a brokerage commission allegedly earned by virtue of an open listing agreement between plaintiff and defendant.

The instant matter was consolidated below with a companion case, Young v. Bishop, 88 Ariz. 140, 353 P.2d 1017, which was an action by a group of buyers to enforce specific performance of an alleged contract of sale with the present defendant-seller. While it arose out of the same transaction involved in that case, the present controversy presents an issue basically distinct from that in the specific performance case, hence, an independent analysis of the facts and the law applicable to the facts, is requisite.

The undisputed facts appear to be these: plaintiff, a licensed real estate broker, on January 16, 1956, received from defendant an open listing, in the form of mimeographed or lithographed sheets, to sell real property owned by the defendant and located in Maricopa County. With respect to the material terms of sale, the listing provided for a purchase price of $50,000 to be paid

in three installments in the proportion of $14,500 payable not later than the close of escrow, $17,750 to be paid on August 1, 1956 and a like amount due August 1, 1957. An interest rate of 4½ per cent per annum was specified for deferred payments from the date of escrow instructions. The listing stipulated that a sale of the realty should be handled through escrow in the Phoenix Title & Trust Company according to the customary escrow instructions used by said firm; furthermore, plaintiff as broker was authorized to accept from any purchaser the sum of $1,000 as earnest money, which sum together with the balance making up the required payment of $14,500 was to be deposited with the aforementioned title company in escrow. The listing provided for a five per cent brokerage commission on the sale price. At the conclusion of the listing appeared the following information in mechanical print:

> "W. W. Bishop Owner
> 382 North Second Avenue
> Phoenix, Arizona"

It is to be noted that the listing contained a description of the land to be sold.

Plaintiff thereafter located a syndicate of buyers, who appeared as plaintiffs in the companion case, No. 6602, and we next find that the escrow agreement of January 16, 1956, referred to in the companion case, was executed between the parties. The escrow agreement, which was signed by defendant and plaintiff herein, particularized the method and terms of payment of plaintiff's five per cent commission and in addition spelled out the terms of an alleged contract of sale between the buying syndicate and defendant. In material part, the escrow agreement acknowledged the sale price of $50,000 and detailed the terms of payment as follows: a deposit of $1,000 as earnest money in escrow to be followed by another deposit of $7,750 upon seller's compliance with escrow; thereafter three installments of $13,750 at an annual interest rate of 4½ per cent, payments to begin one year after the close of escrow. By the express terms of the initial escrow agreement, completion of the escrow was predicated and conditioned upon the formulation of certain supplemental trust escrow instructions, the nature of which is not material to the disposition of this appeal. Suffice it to say, these supplemental instructions were not fully consummated and the deal fell through, as a result of which the specific performance action and this action were instituted.

In essence, plaintiff, in support of the judgment, contends that when a broker produces a purchaser ready, willing and able to purchase according to the terms of a listing agreement given to the broker by the seller, he had earned his commission even though a final consummated sale might fail because of the fault of the seller. As proof of the assertion that he provided a

ready, willing and able buyer upon the terms of the listing, plaintiff points to the terms of sale contained in the signed escrow agreement as being sufficiently identical to those set forth in the original open listing. Defendant, on the other hand, contends that the open listing was not "signed" by him as required by the statutes and that, therefore, the statute of frauds bars consideration of the open listing agreement in action by the plaintiff to recover a brokerage commission. Therefore, this argument continues, there is left in evidence only one writing signed by him, to wit, the escrow agreement; and while this agreement provides for a commission in favor of plaintiff, it also contemplates the execution of certain supplemental escrow instructions which have never been executed, nor has defendant been in default thereunder, nor has an agreement of sale ever been executed, and that being so, defendant concludes, plaintiff has failed to establish his right to the commission in a manner satisfactory to the affirmance of the summary judgment granted in his favor.

At the outset, we note that it is the law in this jurisdiction that no action shall be brought in any court upon an agreement authorizing or employing an agent or broker to sell real property for compensation or a commission unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized. A.R.S. § 44–101, subparagraph 7; Mallamo v. Hartman, 70 Ariz. 294, 219 P.2d 1039. The issue is raised at bar whether the attachment to paper of the seller's signature by means of mimeograph or other mechanical process is a sufficient signing by the party to be charged to satisfy the statute of frauds alluded to above, or whether the statute must strictly be construed to require the signature to be in the seller's own handwriting.

We are fully satisfied that the general rule is that a writing or memorandum is "signed" in accordance with the statute of frauds if it is signed by the person to be charged by any of the known modes of impressing a name on paper, namely, by writing, printing, lithographing, or other such mode, provided the same is done with the intention of signing. City of Gary v. Russell, 123 Ind.App. 609, 112 N.E.2d 872; Cummings v. Landes, 140 Iowa 80, 117 N.W. 22; Weiner v. Mullaney, 59 Cal.App.2d 620, 140 P.2d 704; Irving v. Goodimate Co., 320 Mass. 454, 70 N.E.2d 414, 171 A.L.R. 326; Potter v. Ritchardson, 360 Mo. 661, 230 S.W.2d 672; In re Deep River Nat. Bank, 73 Conn. 341, 47 A. 675. Defendant does not contend that the statement of his name and address on the open listing was not intended as his signature, nor do we believe he seriously could do so under the facts.

■ In order for a broker to recover a commission on the basis of compliance with the requirements of an open listing agreement, he must show that he produced a buyer ready, willing and able to purchase on the precise terms stipulated by the seller in his listing agreement. Roseberry v. Heckler, 84 Ariz. 247, 326 P.2d 365; Geyler v. Dailey, 70 Ariz. 135, 217 P.2d 583; White v. Turner, 164 Kan. 659, 192 P.2d 200; Nordale Realty Co. v. Hanel, 251 Wis. 136, 28 N.W.2d 245; Labbe v. Cyr, 150 Me. 342, 111 A.2d 330; Nelson v. Mayer, 101 Cal.App.2d 733, 226 P.2d 20; Rowe v. Shilby, 86 App.D.C. 74, 179 F.2d 807, 18 A.L.R.2d 373. Since it is the production of a buyer ready, willing and able to buy that entitled the broker to a commission and not the final closing of the sales transaction, Burt v. Heikkala, 44 Wash.2d 52, 265 P.2d 280, it is immaterial if thereafter no actual transfer or consummated sale takes place because of the refusal of the vendor to convey. Roseberry v. Heckler, supra; Richey v. McGinnis Inv. Co., 87 Cal.App.2d 145, 196 P.2d 131; Chapin v. Ruby, 321 Mass. 512, 74 N.E.2d 12; Korman v. Wanen Catalpa Apartments, Inc., 20 Ill.App.2d 598, 156 N.E.2d 621; Labbe v. Cyr, supra; Penney v. Speake, 256 Ala. 359, 54 So.2d 709. Of course, a change made by the seller, when consummating the sale, in the price of the land or the terms of the sale from those specified in the broker's listing agreement cannot of itself affect or impair in any way the right of the broker to his commission. Nelson v. Mayer, supra.

■ A material deviation from the terms specified in the listing agreement, however, will destroy the broker's right to compensation. Buckner v. Tweed, 81 App. D.C. 256, 157 F.2d 211; Olson v. Penkert, 252 Minn. 334, 90 N.W.2d 193. The necessity of strict performance by the broker within the scope of authority conferred by the listing agreement, has been ably stated in Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599, 601:

> "We think the deviation from the authority granted is fatal to plaintiff's right to recover. * * *
>
> * * * * * *
>
> "It is settled law that a broker, before he is entitled to his commission, must not only find a purchaser able, ready, and willing to buy, but upon the identical terms authorized by his principal. It is a rule of agency which admits of no exception, and courts do not hesitate to strictly enforce it. Any other course would open the door to fraud, and place the principal at the mercy of his agent."

Thus, where the parties agree upon the total sales price but differ on terms of payment, the broker is not entitled to a commission. Holloway v. McArthur, 224 Ark. 461, 274 S.W.2d 474; See, Annotation, 18 A.L.R.2d 376.

In the case at bar, defendant's open listing required basically a total sales price of $50,000 to be discharged by these terms: a $1,000 earnest money deposit plus a sufficient balance to comprise a total $14,500 payable into escrow, to be followed by two annual installments of $17,750. The escrow agreement, which plaintiff contends evidences his clients' agreement to defendant's terms, contemplates the same sales price of $50,000, but provides for these terms: a $1,000 initial deposit into escrow followed by a payment of $7,750 *upon seller's compliance* with the escrow, to be followed by *three* annual installments of $13,750. Thus we see that not only has the deposit in escrow been decreased and the term of installment payment increased, but the larger portion of the payment into escrow has been expressly conditioned upon the seller's compliance, a condition not to be found in the listing agreement. We therefore hold that the foregoing clearly constitutes a material deviation from the specifications of defendant's listing.

It may well be that the buyers in this case fully agreed to all the terms included in the listing and that thereafter the parties merely agreed upon a different course of action; if so, plaintiff's right to a commission is assured. On the other hand, it may be that the buyers did not agree to defendant's sale terms and that the parties arrived at the terms embodied in the escrow agreement only after further negotiation. If so, plaintiff has failed to meet the "ready, willing and able" test and thus has not complied with the basic requirement to an action to enforce a commission allegedly earned on an open listing agreement. In that event, plaintiff's right to a commission must be predicated upon the terms of the aforementioned escrow agreement the legal efficacy of which as a memorandum of a binding agreement of sale between the parties, has yet to be determined, as we held in the companion case of Young v. Bishop.

Because the escrow agreement reflects a material disparity between the terms of sale set forth therein and those stipulated by defendant in his open listing, and in view of the total lack of evidence in the record bearing on this disparity, we are compelled to hold that a very material question of fact remains to be settled. That being so, the summary judgment cannot stand.

Judgment reversed.

STRUCKMEYER, C. J., and PHELPS, BERNSTEIN, and UDALL, JJ., concurring.