531 P.2d 538

**Juanita RICHARDS dba Richards Realty, Appellant,**

**v.**

**Florence SIMPSON, Appellee.**

**No. 11686.**

Supreme Court of Arizona, In Division.

Feb. 6, 1975.

Vanlandingham & Little by John Vanlandingham, Phoenix, for appellant.

J. William Moore, Phoenix, for appellee.

CAMERON, Chief Justice.

Juanita Richards, dba Richards Realty, a licensed real estate broker, sued Mrs. Florence Simpson to recover a real estate commission for the uncompleted sale of land owned by Mrs. Simpson. A directed verdict was granted in favor of defendant Simpson from which judgment the plaintiff Richards appeals.

Although the plaintiff raises several questions on appeal, we believe the answer to only one is dispositive of the matter: Was there a valid offer of sale by the defendant and acceptance by the buyer produced by the plaintiff so as to entitle the plaintiff to an earned commission?

The facts necessary for a determination of this case are as follows. In 1965 Juanita Richards, an Arizona real estate broker, placed an advertisement in a newspaper in which she solicited information about parcels of land for sale. Mrs. Simpson, the owner of two patented mining claims in the Prescott National Forest, in response to this advertisement, mailed plaintiff a memo about her property. The memo read as follows:

```
"
                          ⎧ Mrs. R. H. Simpson
                          ⎪ 7133 E. Lincoln Drive
   Prescott Property      ⎨ Scottsdale, Arizona
                          ⎩ WH5–8501
331/2 Acres—$1650 per acre—Beautiful pines
Two patented mining claims—
'The Stanley' and 'The Edith', in Prescott National
   Forest.
                          ⎧ 2 mi from new Lynx Lake and
                          ⎪   3/4 mi. off Walker Road
   Approximately          ⎨ 41/2 mi. from Black Canyon
                          ⎪   Hiway and Walker Road
                          ⎩   Turn-off
Mrs. Richards,
   If you would like more information you can call
me at WH5–8501.
                          /s/ Mrs. F. Simpson        "
```

During the next five years plaintiff and defendant communicated occasionally by phone and met once in person. The terms of the offer of sale were changed from time to time to reflect what the defendant would take for her property in light of the changing economic conditions. In the fall of 1970 plaintiff found a prospective buyer, a Mrs. Baker. Mrs. Baker had in mind to subdivide the land and was particularly concerned about problems of roads and access to the property. Defendant informed the plaintiff that for the past thirty years she had used a Forest Service road for ingress and egress but that she possessed no guarantees or assurances from the Forest Service that the road would always be available.

On 14 November 1970 plaintiff prepared a "Purchase Contract and Receipt" for the sale of the property to Mrs. Baker. The

contract provided for $1,000 deposit and $1,000 more when "Forest Service assures the use of the existing road to the property." The contract also provided for lot release provisions when $2,500 was paid. Defendant refused to agree to these two provisions and had her attorney prepare escrow instructions which contained no provisions about the road or release provisions. The instructions further provided that the instructions had to be signed by the buyer by 20 March 1971. These escrow instructions were never signed by Mrs. Baker. Plaintiff at this time prepared and submitted alternative escrow instructions signed by Mrs. Baker with the statement "to be accepted by seller on or before April 20, 1971." These new instructions contained the following:

"5. Seller shall have the option and must elect, prior to close of escrow, to either:

"1. Complete the access Road from Walker Road through the forest and across the Stanley Claim in accordance with specifications of the Prescott Forest Service within 30 days of close of escrow or,

"2. Reduce the total purchase price to be paid by the buyer from $50,000.00 to a total of $47,000.00 thereby reducing the necessary down payments to be paid at close of escrow by $1,200.00 the sum of $11,500.00 and reducing the 5 annual payments by a total of $1,800.00 or $360.00 per year."

Defendant did not agree and on 2 April her attorney wrote plaintiff's attorney as follows:

"This is to notify your client Juanita Richards that the escrow instructions No. 02018610–2, with Transamerica Title and Insurance Company, have been cancelled since it was not accepted, and of course my client Florence Simpson would not accept the counter offer submitted.

"This is further notice that Florence Simpson has withdrawn the land from the market; and further to notify your

client Juanita Richards that any listing of said property with her is immediately cancelled.

"My client further requests no future contacts be made except through her attorney."

Thereafter, on 14 April, plaintiff prepared new escrow instructions embodying the original offer of defendant. Mrs. Baker signed these instructions as buyer, but defendant refused to agree to the sale and plaintiff brought suit.

■■ It is plaintiff's contention that she found a buyer ready, willing and able to purchase on the precise terms of the offer of sale and that therefore she is entitled to her commission. We do not agree. From the facts in the instant case, it does not appear that the plaintiff did in fact find a buyer ready, willing and able to accept defendant's offer until after defendant had, in fact, withdrawn that offer.

■■ Escrow instructions may serve to comply with the statute of frauds, T. D. Dennis Builder, Inc. v. Goff, 101 Ariz. 211, 418 P.2d 367 (1966), and had any of the successive escrow instructions been a memo of a binding agreement of sale negotiated by the plaintiff then we could uphold plaintiff's right to a commission. There was, however, no agreement.

Our Court of Appeals has stated:

"We start with the premise that a contract is an agreement which creates an obligation; that mutual consent is a requisite to the creation of a contract, and that it becomes binding when a proposition is made on one side and accepted on the other. * * *" Malcoff v. Coyier, 14 Ariz.App. 524, 526, 484 P.2d 1053, 1055 (1971).

■■ To create mutual consent and therefore a contract, acceptance of the offer must be unequivocal. Clark v. Compania Ganadera de Cananea, S.A., 94 Ariz. 391, 385 P.2d 691 (1963). There was no acceptance of the defendant's offer while it was still open. Even if we assume that the alternative instructions signed by Mrs.

**418**

Baker were in fact an acceptance of defendant's offer, it came too late. The defendant had already withdrawn her offer by then. An offer which is given without consideration to the offerer can be withdrawn at any time prior to acceptance. Patton v. Paradise Hills Shopping Center, Inc., 4 Ariz.App. 11, 417 P.2d 382 (1966).

There being no contract the plaintiff had not earned her commission. We have stated:

> "In order for a broker to recover a commission on the basis of compliance with the requirements of an open listing agreement, he must show that he produced a buyer ready, willing and able to purchase on the precise terms stipulated by the seller in his listing agreement.

> \*   \*   \*   \*   \*   \*

> "A material deviation from the terms specified in the listing agreement, however, will destroy the broker's right to compensation. \* \* \*" Bishop v. Norell, 88 Ariz. 148, 152, 353 P.2d 1022, 1025 (1960).

Bishop v. Norell, supra, at 1025, cited with approval the D. C. Court of Appeals in Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599, 601, which stated:

> "It is settled law that a broker, before he is entitled to his commission, must not only find a purchaser able, ready, and willing to buy, but upon the identical terms authorized by his principal. It is a rule of agency which admits of no exception, and courts do not hesitate to strictly enforce it. Any other course would open the door to fraud, and place the principal at the mercy of his agent."

In the instant case, once the offer of the defendant had been rejected by way of a counter offer, the defendant could and did properly withdraw her offer. There was no agreement, no sale, and therefore no commission. It was therefore appropriate for the court to grant a directed verdict in favor of the defendant Mrs. Simpson.

Rule 50, Rules of Civil Procedure, 16 A.R.S.; Arizona Public Service Company v. Brittain, 107 Ariz. 278, 486 P.2d 176 (1971); Campbell v. Brinson, 89 Ariz. 197, 360 P.2d 211 (1961).

Judgment affirmed.

LOCKWOOD and HOLOHAN, JJ., concur.