836 P.2d 454

**R & M OXFORD CONSTRUCTION, INC., an Arizona corporation, Plaintiff–Appellee,**

v.

**Irvin W. SMITH and Olive L. Smith, husband and wife, Defendants– Appellants.**

No. 1 CA–CV 91–0049.

Court of Appeals of Arizona, Division 1, Department D.

July 21, 1992.

242

Sears & Goodman, P.C. by John M. Sears, Russell S. Duerksen, Prescott, for plaintiff-appellee.

William Lee Eaton, Prescott, for defendants-appellants.

## OPINION

TOCI, Judge.

This matter involves an action to foreclose a mechanic's lien. The plaintiff con-

tractor, R & M Oxford Construction, Inc. ("Oxford") filed a notice and claim of lien, based upon a contract for the construction of masonry footings and concrete slabs for Irwin and Olive Smith's home. When filing of the lien failed to generate payment, Oxford filed a complaint for breach of contract and lien foreclosure. This is an appeal from a judgment entered upon a jury verdict in favor of Oxford. The judgment foreclosed the mechanic's lien, awarded damages for breach of contract, and denied damages to the Smiths on their counterclaim for breach of contract and wrongful lien.

## I. ISSUE

The court instructed the jury that a handwritten signature is not the only method of signing a contract. The primary issue is whether such instructions allowed the jury to erroneously conclude that, as a result of Mr. Smith handing his business card to Oxford and agreeing to Oxford's proposal, Oxford had lien rights pursuant to A.R.S. section 33–1002(B) because it executed "in writing a contract directly with the owner-occupant." We hold that there is no evidence in the record which supports the legal conclusion that Mr. Smith executed a *written* contract by handing his business card to Oxford. The instructions were misleading because they allowed the jury to speculate that the parties executed a written contract. The Smiths are entitled to a new trial on their counterclaim for wrongful lien. The judgment is affirmed in part and reversed in part.

## II. FACTS AND PROCEDURAL HISTORY

We view the evidence in a light most favorable to upholding the jury's verdict. *McFarlin v. Hall,* 127 Ariz. 220, 619 P.2d 729 (1980). The Smiths contacted Oxford requesting a proposal to do masonry and concrete work. They eventually agreed on the construction of concrete footings and slabs for the foundation of the Smith residence at a total price of $17,654.41.

Oxford testified that, at their first meeting, he and Mr. Smith inspected the site and reviewed the blueprints. Oxford then worked up a bid for $17,701.00, which he gave to Mrs. Smith by telephone. Oxford later wrote the bid on a triplicate form and gave a copy of the bid to Smith at their second meeting. Smith verbally agreed to the proposal and gave Oxford his business card.

Although Smith disputed some of Oxford's testimony concerning their meetings, he acknowledged that he reached an agreement with Oxford. He conceded that Oxford spoke with Mrs. Smith by telephone, giving her the price quotations and that Smith returned the call and verbally agreed to Oxford's proposal. Although Smith testified that he never received a written contract or bid, he agrees the parties entered into an oral contract. In fact, he testified that he would have signed a written contract if he had been asked to do so.

By March or April of 1988, Oxford had completed all of its work. Smith made two payments in March, one for $1,000.00 and one for $2,000.00. On April 18, he made a payment of $6,725.00 for the slabs. The payments left an unpaid balance of $7,929.41.

After it rained in April, Smith noticed puddling of rainwater on the slabs. In May, Smith complained to Oxford. Oxford submitted a proposal to reduce the total price by $850.00 to $7,079.41. After a heated discussion in which Oxford demanded payment, Smith removed Oxford from the job.

On July 11, 1988, Oxford filed a notice and claim of mechanic's lien against the property. The lien asserted that Oxford had an oral contract with the Smiths. Oxford later filed this suit for breach of an *oral contract* and foreclosure of the mechanic's lien.

In response, the Smiths demanded that Oxford release the lien, claiming it was invalid. They filed a counterclaim alleging claims for breach of contract, statutory slander of title, and quiet title. They later amended the counterclaim to seek damages for wrongful lien under A.R.S. section 33–

420(A).[1] In its reply to the amended counterclaim, Oxford alleged that the oral agreement had been "confirmed in writing by the parties."

The case went to trial on Oxford's claim for breach of contract for $7,079.41 and on the Smiths' counterclaims for breach of contract for the cost to fix the concrete slabs and damages for wrongful lien. The jury awarded Oxford the full amount of $7,079.41 for breach of contract and denied the Smiths any recovery on their counterclaim. The court entered judgment in accordance with the verdict. After the court denied their motion for new trial, the Smiths filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. sections 12–2101(B) and (F)(1).

## III.  DISCUSSION

### A.  THE JURY INSTRUCTIONS

#### 1.  Standard of Review

It is reversible error for the trial court to give an instruction on a legal theory which is not supported by the facts in the record. *Herman v. Sedor*, 168 Ariz. 156, 158, 812 P.2d 629, 631 (1991). This is so because an unsupported instruction invites the jury to speculate as to possible nonexistent circumstances. *Id.* On appeal, we will view the instructions "as a whole and not piecemeal ... the test being, upon the whole charge, whether the jury will gather the proper rules to be applied in arriving at the correct decision...." *Id.* at 157, 812 P.2d at 630 (citation omitted).        .

#### 2.  The Instructions That "Any Mark Affixed to a Writing" is a Sufficient Signature

At the close of the evidence, the court gave the following instructions:

Affixing one's handwritten signature is not the only method by which a paper

---

1.  A.R.S. § 33–420(A) provides:

A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded or filed in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, con-

writing may be considered as being signed.

Any mark affixed to a writing with the intent to authenticate it constitutes a sufficient subscription by the party sought to be charged.

The Smiths objected to these instructions, claiming that they misled the jury as to whether a valid mechanic's lien existed pursuant to A.R.S. section 33–1002(B). We agree. We find that the facts in the record do not support the legal conclusion that a written contract was executed. Thus, the instructions impermissibly invited the jury to "speculate as to possible nonexistent circumstances." *Herman*, 168 Ariz. at 158, 812 P.2d at 631 (citation omitted).

Arizona Revised Statutes section 33–1002 provides:

B.  No lien provided for in this article shall be allowed or recorded by the person claiming a lien against the dwelling of a person who became an owner-occupant prior to the construction, alteration, repair or improvement, except by a person having executed in writing a contract directly with the owner-occupant.

The lien provided by this section arises only if an "owner-occupant" has "executed" a written contract. In this case, it is undisputed that Smith never affixed his signature on a contract. The question is whether Smith's act of giving Oxford his business card satisfied the "execution in writing" requirement of section 33–1002(B).

The language of section 33–1002(B) is somewhat less specific than that found in the general statute of frauds, which requires that certain contracts be "in writing and signed by the party to be charged" as opposed to "executed in writing." A.R.S. § 44–101. A contract, however, is executed by being signed and the signature is part of the execution. *Mastin Realty & Mining Co. v. Comm'r of Internal Revenue*, 130 F.2d 1003, 1006 (8th Cir.1942).

tains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording or filing, whichever is greater, and reasonable attorney fees and costs of the action.

Thus, we find the language and purpose of section 33–1002(B) to be similar to A.R.S. section 44–101. Section 33–1002(B) indicates a legislative intent to protect owner-occupants who usually are less sophisticated than the contractors with whom they are doing business. Protection of owner-occupants under this statute would be illusory if we interpreted it to permit a lien without requiring the owners to sign the written contract.

█ We recognize that a handwritten signature is not the only acceptable method for signing. For example, in *Bishop v. Norell*, 88 Ariz. 148, 353 P.2d 1022 (1960), the court held that a mimeographed real estate listing, at the bottom of which appeared the name of the owner "in mechanical print," was a sufficient signature to satisfy the statute of frauds. The *Bishop* court stated:

> We are fully satisfied that the general rule is that a writing or memorandum is "signed" in accordance with the statute of frauds if it is signed by the person to be charged by any of the known modes of impressing a name on paper, namely, by writing, printing, lithographing, or other such mode, provided the same is done with the intention of signing.

88 Ariz. at 151, 353 P.2d at 1025. *Bishop* clearly held that the party to be charged must impress his or her name on the contract "with the intention of signing." *Id.*

█ Although Oxford agrees with the general rule stated in *Bishop*, it argues that the jury instructions were proper because Smith "impressed" his name on the proposal with the intent to sign it when he gave Oxford his business card. This argument is not supported by the record. Oxford testified that he went to the job site with a written proposal in triplicate containing the terms and conditions of the contract and the "bottom-line" price. He gave one copy to Smith and kept the other two. Although there was a signature block at the end of the proposal, Smith neither signed it nor made any mark on it.

The parties agree that Smith gave Oxford his business card on which he had written his home phone number. The record, however, does not clearly establish whether this occurred at the second meeting when Smith received his copy of the Oxford proposal or at the first meeting when they inspected the site. On cross-examination, Oxford was not certain when he got the business card:

> Q. In fact, you don't know whether you got the business card on the first meeting or the second meeting?
>
> A. [Oxford:] I believe it was the first time I met Mr. Smith at the property.
>
> Q. Was when you got the business card?
>
> A. [Oxford:] *I think so,* yes.

(Emphasis added.) Nevertheless, Oxford testified unequivocally that he, not Smith, stapled Smith's business card to Oxford's copies of the proposal. We hold that Oxford's stapling of Smith's business card to the written proposal—no matter when Oxford got the card from Smith—did not constitute one of the acceptable methods to "impress [one's] name on [a] paper ... with the intention of signing." *Bishop,* 88 Ariz. at 151, 353 P.2d at 1025.

We conclude that although the court's instructions were a correct statement of the law, they were not supported by the facts in the record. The trial court erred in giving these instructions because they improperly allowed the jury to speculate whether a signed contract existed. We reverse and remand for a new trial on Smith's claim of wrongful lien.

### 3. The "Liberal Lien Law" Instructions

Although we have previously determined that a new trial is required, we will address the propriety of the lien instructions for the benefit of the trial court on remand. The trial court, over Smith's objections, instructed the jury as follows:

> Arizona Lien Laws are to be liberally construed.
>
> A liberal construction of lien laws means that if you find that there was substantial compliance with the statute and that compliance was consistent with the purpose of the law, then the Plaintiff

has a valid lien. You need not find a strict following of every detail in the statute in order to conclude that the Plaintiff's lien is valid.

The above instructions are a correct statement of the law concerning the interpretation of mechanic's lien statutes. *See, e.g., Price v. Sunmaster,* 27 Ariz.App. 771, 774, 558 P.2d 966, 969 (1976) (materialmen's lien statute is remedial and is to be liberally construed). However, for several reasons, the court erred when it gave those instructions.

■ First, the rule that mechanic's lien laws are to be liberally construed is a rule of statutory construction. Principles of statutory construction are designed to aid judges when they interpret statutes. It was not an appropriate instruction to guide the jury when they applied the law to the facts. Second, we have already held that no valid lien exists pursuant to A.R.S. section 33–1002(B). Thus, Oxford's substantial compliance or noncompliance is beside the point. Third, we observe that if a lien claimant is required to follow certain statutory steps to perfect a mechanic's lien, it is "beyond the remedial scope of equity ... to protect the lien claimant against the untoward consequences of what probably was his own neglect." *Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 432, 561 P.2d 750, 756 (App.1977).

■ Finally, the "liberal construction" instructions, when viewed in conjunction with the court's instruction that "any mark affixed to a writing" is a sufficient signature, allowed the jury to improperly speculate that the giving of the business card in this case constituted the execution of a written contract. The trial court erred by giving misleading instructions. The instructions did not help the jury "gather the proper rules to [apply] in arriving at the correct decision...." *Herman,* 168 Ariz. at 157, 812 P.2d at 630 (citation omitted).

## B. THE ISSUE OF DAMAGES

■ The jury returned a verdict in Oxford's favor granting all of its claimed damages. The Smiths received nothing on their counterclaim. The Smiths argue that this verdict was contrary to the evidence and the law. They contend that the evidence required the jury to return a verdict in their favor on their counterclaim for $19,787.00, the cost to replace the allegedly-defective cement slabs. We disagree. The Smiths' briefs recognize the existence of conflicting testimony in the record and their attorney conceded, in oral argument, that the jury had resolved the conflict against them.

Nevertheless, the Smiths argue that the jury could not properly disregard their expert's testimony regarding the cost of replacing the slabs. They point out that Oxford acknowledged that the slabs were "bowed"; that is, they had a difference in elevation from edge to middle exceeding ½ to ¾ inch. Further, the Smiths emphasize that they presented expert testimony that complete replacement of the slabs, at a contractor's bid price of $19,787.00, was a reasonable solution.

We reject these arguments for the following reasons. First, the Smiths concede that after discovering the problems, Smith prevented Oxford from correcting any defects in the slabs and proceeded to construct a complete dwelling on top of them. The $19,787.00 bid for total replacement included amounts for removing floor coverings and cabinets that were installed after the Smiths prevented Oxford from correcting the error.

Second, other witnesses disagreed with the Smiths' replacement-cost testimony. Oxford testified that applying an overlay of "Gyp-crete" to even out the slab was an alternative to complete replacement. Even the Smiths' expert testified that "Gyp-crete" was one of the alternatives to replacement of the slabs. Oxford testified that the "Gyp-crete" alternative was less expensive than the total replacement advocated by the Smiths. The jury verdict resolved this conflict in favor of Oxford.

Third, Oxford produced testimony that the uneven slabs do not present a structural problem. In addition, Mr. Smith testified that the only adverse effects he suffered from the uneven floor were that

some curio chests tilted, and he had to "shim" the base cabinets in the kitchen. The jury could have determined that under these circumstances it was unreasonable to charge nearly $20,000.00 to replace the slabs.

The Smiths concede the existence of the above testimony. However, they contend that the jury erred in disregarding their expert's testimony because he conducted an in-depth analysis while Oxford's witnesses did not. This contention challenges witness credibility, again an issue for the jury. Conflicts of evidence are within the sole province of the trier of fact, as is the weight of the evidence and the reasonable inferences to be drawn therefrom. *Todaro v. Gardner*, 72 Ariz. 87, 91, 231 P.2d 435, 437 (1951); *Rogers v. Greer*, 70 Ariz. 264, 270, 219 P.2d 760, 763 (1950).

We will not reverse a jury's verdict if there is evidence to support it. The Smiths' briefs and their concessions in oral argument recognize the existence of such testimony in the record. Their position is without merit. We affirm the jury's verdict on this issue.

## IV. ATTORNEY'S FEES

■ The Smiths have requested their attorney's fees on appeal pursuant to A.R.S. sections 12–341.01 and 33–420(A). Because we have rejected their contract arguments, they cannot recover fees under section 12–341.01. Although attorney's fees may be awarded in an action under section 33–420(A), the Smiths' success on this appeal merely results in a new trial to allow them to pursue their claim. The request, therefore, is premature, and we deny it without prejudice. The trial court may award attorney's fees pursuant to section 33–420(A) should the Smiths prevail on remand.

Oxford has requested its attorney's fees pursuant to A.R.S. section 12–341.01. We grant the request as to those fees incurred in the prosecution of the contract cause of action only. Oxford shall file an application in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

## V. CONCLUSION

The trial court did not err in denying the Smiths' motion for new trial on the breach of contract issue. However, its instructions improperly allowed the jury to conclude that there was a written contract on which Oxford based its notice and claim of lien. This tainted the verdict on the Smiths' counterclaim for damages under A.R.S. section 33–420.

The judgment, therefore, is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

KLEINSCHMIDT and EHRLICH, JJ., concur.