NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

AMALIA VILLA, individually; and SANTIAGO ALAMILLO,
individually, *Plaintiffs/Appellants*,

*v.*

DONALD KEITH FURAR and DEBRA FURAR, husband and wife,
*Defendants/Appellees*.

No. 1 CA-CV 13-0653
FILED 6-9-2015

Appeal from the Superior Court in Maricopa County
No. CV2010-022642
The Honorable John C. Rea, Judge

**AFFIRMED**

COUNSEL

Ganz & Hauf, Las Vegas, NV
By Adam Ganz, Marjorie L. Hauf
*Counsel for Plaintiffs/Appellants*

Edythe H. Kelly & Associates, Tempe
By Kathleen C. Kerchansky
*Co-Counsel for Defendants/Appellees*

DeCiancio Robbins PLC, Tempe
By Joel DeCiancio, Christopher Robbins
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

¶1        Amalia Villa and Santiago Alamillo (collectively, "Appellants") filed suit against Donald Furar seeking damages stemming from an automobile accident.[1]  Following a six-day trial, a jury awarded Villa $5,000 in damages, and returned a defense verdict against Alamillo. Furar then sought sanctions pursuant to Rule 68, Ariz. R. Civ. P., alleging Appellants had failed to receive a more favorable judgment than Furar's initial offers of judgment, meaning Furar was entitled to his expert witness fees and double his taxable costs.  Applying Rule 68, the trial court imposed a $29,608.24 sanction against Alamillo and a $20,802.17 sanction against Villa.  Appellants appeal from the jury's verdict and the trial court's order imposing these sanctions.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        On July 29, 2008, Furar rear-ended Villa's minivan on the I-17 freeway in Phoenix, Arizona.  Alamillo was a passenger in Villa's vehicle. Approximately two years later, in July 2010, Appellants filed a *pro se* tort complaint, seeking damages for medical expenses, out-of-pocket expenses, general damages, lost wages, and costs.  Appellants retained counsel in September 2010.  At Appellants' request, the trial court extended the period of time for service and Furar subsequently answered the complaint in January 2011.  In his answer, Furar admitted negligence (duty and breach of that duty), but denied causation and damages alleged by Appellants. The court ultimately granted partial summary judgment in favor of Appellants on the issue of negligence.  Before trial, both sides exchanged Rule 68 offers of judgment, which were not accepted.

---

[1]        Appellants' minor son, Esai Alamillo-Villa, also sued Furar, but ultimately accepted an offer of judgment from Furar for $4,000.  Esai is not a party to this appeal.

¶3         After several continuances, a six-day trial was conducted in April 2013.  The jury ultimately returned a defense verdict against Alamillo, and awarded Villa $5,000 in damages.  Following trial, Furar filed motions for Rule 68 sanctions against Appellants.  Appellants opposed the motions, arguing (1) Furar's initial offers of judgment were not valid under Rule 68; (2) it was impossible to know if Appellants obtained a more favorable judgment than the offer; and (3) Furar's expert witness fees were unreasonable.  Applying Rule 68, the trial court imposed sanctions against Alamillo and Villa totaling $29,608.24 and $20,802.17, respectively.[2] Appellants timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and  12-2101(A)(1).[3]

**ANALYSIS**

¶4         Appellants assert four issues on appeal.  First, Appellants assert defense counsel engaged in multiple acts of misconduct that materially affected their right to a fair trial.  Second, Appellants argue a juror's conduct materially affected their right to a fair trial.   Third, Appellants allege the jury's award of damages was insufficient and not justified by the evidence.  Fourth, Appellants argue the trial court's award of Rule 68 sanctions against them was erroneous.  We address each of these issues in turn.

> I.      *The conduct of defense counsel did not affect Appellants' right to a fair trial.*

¶5         Appellants allege nine separate instances of misconduct by defense counsel that occurred during trial.  Appellants contend that the alleged instances of misconduct, cumulatively, deprived them of a fair trial.  We have reviewed the record, but observe that this task is best conducted by the trial court when presented with a timely motion for mistrial or for new trial.  Having presided over the trial and having observed the purported conduct and any effect on the jury, the trial judge is uniquely positioned to determine whether and to what extent the jury and its verdict were affected by the alleged misconduct, and what steps, if any, are necessary to address the issue.  An appellate court's review of a cold

---

[2]     The court initially calculated $28,942.60 in Rule 68 sanctions against Villa.  The court then offset this total by subtracting Villa's jury award and costs, thereby arriving at a total of $20,802.17 in sanctions against Villa.

[3]     We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

transcript is a poor substitute for the "real time" experience of a trial judge observing and dealing with these issues.

¶6 Appellants sporadically objected to some of the alleged instances of misconduct, but failed to object to others, and did not move for mistrial or a new trial. Absent fundamental error, which we apply sparingly in civil cases, Appellants failure to object to alleged misconduct constitutes waiver of those claims. *Williams v. Thude*, 188 Ariz. 257, 260, 934 P.2d 1349, 1352 (1997). As applied to civil cases, fundamental error is defined as "error which goes to the foundation of the case, or which takes from a party a right essential to his case." *Johnson v. Elliott*, 112 Ariz. 57, 61, 537 P.2d 927, 931 (1975). For those situations where Appellants objected, "[g]reat deference is paid to the trial judge's decision as to the immediate disposition of an objection." *Miller v. Palmer*, 143 Ariz. 84, 87, 691 P.2d 1112, 1115 (App. 1984). Only if the misconduct constitutes fundamental error will an appellate court consider relief when the appellant did not ask for relief below. *See id*. Accordingly, absent an abuse of discretion, we will not disturb the trial court's decision. *See id*. at 87-88, 691 P.2d at 1115-16.

¶7 First, Appellants argue defense counsel improperly and repeatedly elicited hearsay statements contained in a police officer's traffic accident report. Appellants' counsel objected three separate times to defense counsel's questioning of Alamillo regarding statements contained in the traffic accident report, and each objection was sustained. In one instance, despite the trial court sustaining the objection, defense counsel repeated the question, which Alamillo then answered, admitting he was unaware the investigating officer had stated Furar was driving less than 20 miles per hour when the accident occurred. Appellants requested a curative instruction. Later that day, the jury asked to see the accident report, prompting the trial court to instruct the jury at that time to disregard the testimony about any statements contain in the report, as it was not in evidence. Before closing arguments, the court again instructed the jury that the traffic accident report was not in evidence and to "disregard all comments about what may or may not be stated in the report." The two separate curative instructions given by the court appropriately addressed Appellants' concern regarding the accident report.

¶8 Second, Appellants allege Furar violated a pre-trial ruling confirming that neither party would raise an issue regarding Appellants' purported lost wages and earning capacity, as those claims had been abandoned prior to trial. During trial, defense counsel first asked Alamillo about Villa's employment at the time of the accident and Alamillo answered counsel's questions without objection. Immediately following

this testimony, Appellants' counsel requested a bench conference, during which defense counsel was reminded of the agreement not to discuss Appellants' employment history. Later that same day, defense counsel asked Villa directly about her employment history. Without objecting to defense counsel's questions, Appellants again requested a bench conference. The trial court excused the jurors from the courtroom. Defense counsel then indicated she questioned Villa regarding her employment history intending to impeach Villa using contradictory statements from Villa's deposition. The court instructed defense counsel to be clearer regarding which statements counsel intended to impeach when using Villa's deposition testimony.

¶9        After the jury returned to the courtroom, without objection, defense counsel asked Villa a few additional questions about her employment history. On appeal, Appellants contend those questions "continued to be irrelevant and in violation of the spirit of the pre-trial [o]rder." Appellants also contend that despite defense counsel's intent, Villa was never impeached. Because Appellants failed to object, even assuming error, these questions regarding Villa's employment history did not go to the foundation of the case, nor did they serve to deprive Appellants of any rights. *See Johnson*, 112 Ariz. at 61, 537 P.2d at 931. Accordingly, there is no fundamental error.

¶10       Third, Appellants contend defense counsel improperly questioned Villa about a subsequent car accident. Villa testified she had been in another car accident, but could not remember when it occurred. Defense counsel then sought to impeach Villa on this point by using her deposition testimony. Appellants' counsel objected, arguing this line of questioning was improper, but ultimately withdrew the objection after defense counsel indicated she only sought to establish the date of the accident. Villa's deposition testimony was then read in open court, which indicated Villa was struck by another vehicle sometime in 2010. The jury later asked questions about the 2010 accident, prompting the trial court to instruct the jury: "[T]he 2010 accident is not relevant in any way to what damages or injuries were sustained in the accident that you have to decide. . . . Nothing that happened in that accident should matter to you in deciding this case." Although Appellants initially objected, they ultimately allowed Villa's deposition to be read in open court for the apparent limited purpose of establishing the date of Villa's subsequent accident. Appellants then failed to object after other information in addition to the date of the accident was given.

¶11　　　　Before trial, the court ruled that Furar would be able to "describe the physical conditions of both [Appellants] on the day they stepped into this vehicle" and the treatment of any injuries stemming from this accident.　The court also ruled that introducing evidence concerning injuries from another accident could improperly suggest to the jury that Appellants were "accident prone" or "sue happy."　The information proffered during trial regarding Villa's subsequent accident does not conflict with the pre-trial ruling.　Moreover, admission of this information, while arguably extraneous, does not constitute fundamental error.　The additional information provided regarding the 2010 accident did not describe any injuries suffered by Villa, nor did it indicate or suggest that Villa had a claim or was pursuing a claim against the other driver.　The trial court properly instructed the jury that the 2010 accident was irrelevant to their decision.　In short, the additional information did not relate to the foundation of Appellants' case or deprive them of any rights.

¶12　　　　Fourth, Appellants contend defense counsel engaged in misconduct when she elicited testimony from Furar regarding the damage to Appellants' minivan.　During direct examination, Furar stated, "[t]he only thing I know of is the bumper come off [sic], and that was maybe hidden damage from previous accidents or something."　Appellants' counsel objected to this statement as speculation, which the trial court sustained, although Appellants' counsel did not move to strike the statement.　Defense counsel asked follow-up questions regarding the visual damage to Appellants' vehicle, to which Appellants' counsel again objected; however, the court overruled Appellants' objection.　We see no error in the trial court's rulings on the stated objections.　In addition, the jury was instructed that where objection to questions were sustained, the jurors should disregard the questions and not speculate as to what the answer would have been, and we presume the jury followed these instructions.　*See State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).　Because the trial court did not abuse its discretion in handling this issue, there was no error.

¶13　　　　Fifth, Appellants argue Furar improperly bolstered the credibility of Dr. Zoran Maric, an orthopedic surgeon retained by the defense to examine Appellants, by eliciting testimony that Dr. Maric had treated other physicians' families, and that he was scheduled to operate on a family member of an individual who worked with defense counsel.　Appellants' objections to these questions were overruled.　On appeal, Appellants offer no context for these statements; however, these statements stem from a line of questioning designed either to elicit the doctor's qualifications, knowledge, and expertise, or to rebut cross-examination

suggesting Dr. Maric was regularly retained by defense counsel and was therefore biased. The trial court did not err when it overruled Appellants' objections. Examination concerning an expert's background and relationships, if any, with retaining counsel may be relevant to assist the jury in evaluating that expert's qualifications, and in determining credibility and whether and to what extent that expert's opinions should be accepted or rejected, in whole or in part. The trial court has substantial discretion in determining the admissibility of such evidence and, on this record, the court did not err in overruling the objections.

¶14 Sixth, Appellants contend Dr. Maric made several statements that violated a pre-trial order precluding Furar from presenting an opinion via Dr. Maric's testimony that Appellants' treating surgeon was "in it for the money." Specifically, in answering a question about the medical necessity of any surgery, Dr. Maric testified, "[t]he last thing I want to do is put a scar on somebody's back and get paid, which we get paid from the patient, et cetera, but them not get better." Appellants did not object to this testimony nor ask that it be stricken; however, outside the presence of the jury and at Appellants' request, the court admonished Dr. Maric, directing him not to speculate as to the mindset of Appellants' treating surgeon.

¶15 During redirect examination, defense counsel questioned Dr. Maric regarding whether Appellants' treating surgeon was still owed $300,000 for the prior surgery, to which the doctor responded, "my understanding is [the treating surgeon] is recommending further surgery or may be recommending further surgery. And certainly if you look at how much is profited from this case. . . . I made a small percentage of that." Appellants objected to this statement, which the trial court sustained. Appellants did not ask that this testimony be stricken. Furar's doctor then testified regarding Villa's unsuccessful surgery:

> I saw her before the surgery, did not recommend surgery. She predictably failed. I mean, this isn't rocket science. It's not as complicated as they would lead you to believe. She had complaints. She didn't have objective findings. Here we are today in this courtroom for litigation. I think we know what's going on here.

Appellants objected to this statement, but the trial court overruled the objection. Dr. Maric's apparent partisanship could arguably undermine his credibility with the jury as it related to the central issues in the case: the

nature and extent of any injuries caused by the subject accident, the necessity of medical and surgical treatment for those injuries, and the nature and extent of any permanent impairment as a result of such injuries. Evaluation of those issues rested squarely with the jury, and they were free to weigh the credibility of Dr. Maric against that of Appellants' treating surgeon when deliberating this case. *See R&M Oxford Constr., Inc. v. Smith*, 172 Ariz. 241, 247, 836 P.2d 454, 460 (App. 1992) (stating witness credibility is a matter for the jury to decide).

**¶16**		Appellants further allege defense counsel made improper statements regarding Dr. Maric's testimony during closing arguments, effectively arguing that Appellants' treating physician's recommendation for further surgery was designed to insure that physician's own "job security." Appellants did not object to these statements and there was no fundamental error. Attorneys are permitted to argue permissible inferences on previously admitted evidence during closing arguments. *Ritchie v. Krasner*, 221 Ariz. 288, 303, ¶ 54, 211 P.3d 1272, 1287 (App. 2009).

**¶17**		Seventh, Appellants assert defense counsel committed misconduct when counsel signaled an intent to elicit testimony from Dr. Maric regarding Villa's alleged failure to take her prescription pain medication. Before defense counsel asked a single question regarding Villa's prescription, Appellants' counsel requested a bench conference, where the trial court ruled that Furar could not question the doctor about Villa's prescription. Based on the record before this court, there was no error, as defense counsel was prohibited from questioning Dr. Maric regarding Villa's prescription.[4]

**¶18**		Appellants next contend defense counsel committed misconduct when she referenced Villa's prescription during closing arguments. In that regard, defense counsel referenced Exhibits 35 and 42, one of which reflected Villa's prescribed medications for May and June 2012, and the other represented a negative urinalysis test for Villa during that time period. Both of these exhibits were admitted at trial and

---

[4]		Appellants contend they considered "calling a medical doctor to rebut the foundationless insinuations of Defense counsel, but considering the inappropriate action by Defense counsel was made on the last day of trial just minutes before closing argument, [Appellants] did not call a rebuttal witness as it would have likely delayed the resolution of the trial." Appellants' factual assertion that this occurred minutes before closing argument is incorrect, as defense counsel attempted to elicit that testimony the afternoon before closing arguments.

Appellants did not object to these statements during Furar's closing. Attorneys may draw reasonable inferences about admitted evidence during closing arguments. *Ritchie* at 303, ¶ 54, 211 P.3d at 1287. Putting aside the questionable relevance of such argument, we see no error, let alone fundamental error, in defense counsel utilizing these exhibits to illuminate a reasonable inference regarding Villa's use, or lack thereof, of her prescription medications.

¶19 Eighth, Appellants contend defense counsel improperly offered her own testimony during trial by making three assertions of fact while questioning witnesses. While questioning Alamillo, defense counsel specifically addressed the jury, stating, "Members of the jury, this is Exhibit 5, Page 19. This is the front of my client's - - I don't know the difference between a rim and a hubcap, so that's not - - this is what I am referring to." Next, defense counsel questioned Alamillo, "When my client came over to you, you were out of your vehicle, correct?" Alamillo responded that Furar never approached him. Defense counsel then stated, "Sir, I want to remind you, you are under oath. . . . My client approached you. You got out of the passenger side of your car, correct?" Finally, while questioning Furar, defense counsel stated, "So where I work in Tempe, I get on Broadway, and then shortly down the road, the 10 goes to the left and the 17 goes to the right?" Appellants did not object to any of these questions.

¶20 Appellants allege these specific statements constitute misconduct; however, when read in context, there is no error. For example, immediately preceding the proffered statement regarding Exhibit 5, the trial court asked whether showing that exhibit to the jury would be helpful, as the attorneys were arguing whether the photo reflected a "hubcap" or a "rim" of a tire. Defense counsel responded affirmatively and was allowed to publish the photo. Although the statement by counsel while publishing the exhibit was extraneous and unnecessary, we cannot see how such statement amounted to fundamental error. With regard to the second statement of counsel, when read in context, it is apparent that counsel was simply cross-examining Alamillo and trying to secure agreement with her client's testimony about post-accident movements. Finally, defense counsel's statements regarding her place of employment appears to have been offered to provide additional context and perhaps even a mental visual aid for the jury members regarding the location of the accident. When taken in context, none of these statements rise to the level of fundamental error.

¶21 Ninth, Appellants contend defense counsel made several statements about Appellants and their counsel residing in Las Vegas.

Appellants allege defense counsel improperly created a "Las Vegas [versus] Phoenix" dichotomy throughout her closing argument to bolster Dr. Maric's credibility, emphasizing the doctor's ties to "our community." Appellants failed to object to any of these statements. More importantly, counsel's argument in this regard did not deprive Appellants of any rights or go to the foundation of Appellants' case. Moreover, both Appellants' and Furar's counsel were free to illuminate the qualifications of their respective retained doctors, and to argue why one opinion should be accepted over the other. The credibility of these doctors was appropriately left to the jury to decide. *See R&M Oxford Constr.* at 247, 836 P.2d at 460.

> II.    *The conduct of one of the jurors did not affect Appellants' right to a fair trial.*

¶22    Appellants' allege that Juror Number 10 "consistently disregard[ed] the court's admonitions by speaking with her significant other who was attending the trial and sitting in the courtroom throughout the trial." At the conclusion of the first day of trial, the parties noted a gentleman, who was present during the proceedings, provided transportation to one of the jurors. The following day, the individual was identified as the companion of Juror #10, and the court then specifically placed him under the "cone of silence in the [standard juror] admonition [prohibiting jurors from discussing the case with family and friends, and to avoid speaking to witnesses or counsel]." After continued reported incidents involving Juror #10's companion, without objection, the trial court interviewed each juror with counsel in chambers.[5] No transcript has been provided concerning this proceeding. Ultimately, with no objection

---

[5]    Juror #10's companion attempted to speak with both Appellants' counsel and defense counsel outside of the courtroom during trial. Furar's counsel told the companion they could not speak, and Appellants' attorney ignored the companion altogether. The following day, the companion apparently spoke to Appellants' doctor, although the nature of this conversation is not reflected in the record, and Appellants' counsel expressly stated, "I don't know how my [doctor] would know [who the companion was]." The court again directed the companion to keep his distance from potential witnesses, just as the jury was instructed. The next day, Appellants' counsel again addressed the court regarding the companion, stating, "he cannot avoid talking," and alleged that the companion had been discussing the actions of both counsel with other attorneys from other courtrooms. Following this series of events, the court conducted individual meetings with each juror in chambers.

by either party, the trial court designated Juror #10 as an alternate, and she was released prior to deliberations.

¶23        Arizona recognizes two types of juror misconduct: (1) cases involving jurors placing extraneous information before the jury; and (2) other forms of jury misconduct. *Dunn v. Maras*, 182 Ariz. 412, 420, 897 P.2d 714, 722 (App. 1995). Here, neither form of jury misconduct existed. First, Appellants admit "[t]here is no way to know exactly what [the companion] did while the trial was ongoing, or the extent to which [the companion] communicated with Juror #10 about [the companion's] experiences." Next, Appellants concede there is no transcript of the in-chambers conversation with any of the jurors but assert, without more, that the trial court's ultimate decision to dismiss Juror #10 was "telling." The record before us, however, merely indicates that the trial court stated that if both parties desired to dismiss her as an alternate, the trial court would "go along with that." This statement is hardly indicative of the trial court's belief that Juror #10, or any of the jurors, engaged in misconduct.

¶24        Moreover, the cases cited by Appellants as precedent regarding injecting extraneous material in jury trials involve instances where it is demonstrated, by either juror affidavit or direct juror testimony, that evidence not contained in the record was considered during jury deliberations. *See State v. Poland*, 132 Ariz. 269, 282-86, 645 P.2d 784, 797-801 (1982) (holding the court could not conclude beyond a reasonable doubt that defendant's prior convictions were not mentioned when four jurors testified that those convictions had been discussed during juror deliberations); *see also Kirby v. Rosell*, 133 Ariz. 42, 46, 648 P.2d 1048, 1052 (App. 1982) (holding the trial court did not abuse its discretion in granting a motion for new trial where on the basis of a juror's affidavit, the jury considered notes from a business law textbook which were not part of the evidence). Here, there is no affidavit or other evidence that otherwise indicates any extraneous information was utilized in the jury's decision. There is also no evidence that Juror #10 or her companion ever provided other members of the jury with any such evidence before Juror #10's dismissal. Appellants are not entitled to a new trial on the basis of their unsupported supposition concerning Juror #10 or her companion.

            III.    *The jury award was supported by the evidence.*

¶25        Appellants challenge the jury's award of damages, alleging the award was insufficient and not supported by the evidence. Appellants fail to set forth any argument regarding this issue in their opening brief; thus, Appellants have waived this issue on appeal. *See State v. Guytan*, 192

Ariz. 514, 520, ¶ 15, 968 P.2d 587, 593 (App. 1998) (issues not raised in the opening brief are waived).[6]

> IV. *The trial court properly assessed Rule 68 sanctions against Appellants.*

**¶26** Appellants assert the trial court erred when it imposed Rule 68 sanctions.[7] On January 18, 2011, Furar offered to have judgment entered for $10,600 in Villa's favor, and the following day, Furar offered to have judgment entered for $16,200 in Alamillo's favor. Appellants rejected these offers on January 27, 2011, instead offering to accept judgments for $100,000 in favor of each Appellant. The parties did not reach an agreement and the jury ultimately awarded Villa $5,000 and Alamillo nothing. Furar then sought sanctions pursuant to Rule 68, and the trial court imposed a $29,608.24 sanction against Alamillo and a $20,802.17 sanction against Villa. We review an award of Rule 68 sanctions for an abuse of discretion. *Flood Control Dist. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 45, ¶ 57, 279 P.3d 1191, 1207 (App. 2012).

---

[6] Even were we to assume Appellants had not waived this issue, we would find no error in the jury's award to Villa. Substantial evidence supported the verdicts, and we will not reweigh evidence on appeal. *See State v. Jones*, 188 Ariz. 388, 394, 937 P.2d 310, 316 (1997).

[7] On appeal, Furar argues Appellants were required to notify Furar in writing within ten days after service of the offer regarding any objections to the validity of the offer; otherwise, any later objection to the validity of the offers was waived. *See* Ariz. R. Civ. P. 68(d); *see also Boyle v. Ford Motor Co.*, 235 Ariz. 529, 531, ¶ 11, 334 P.2d 219, 221 (App. 2014). Appellants explicitly declined Furar's offers of judgment without asserting any objection to the validity of the offers under Rule 68. After Furar sought Rule 68 sanctions, Appellants then alleged Furar failed to comply with Rule 68, as the offers were less than Appellants' medical bills and were premature. The trial court did not address the issue of waiver, but ultimately determined Rule 68 sanctions were appropriate. Appellants' failure to timely object to the validity of the offers may have arguably constituted waiver, *see* Ariz. R. Civ. P. 68(d); however, we nonetheless address Appellants' arguments on the merits.

¶27        Rule 68(g) provides:

> If the offeree rejects an offer and does not later obtain a more favorable judgment other than pursuant to this Rule, the offeree must pay, as a sanction, reasonable expert witness fees and double the taxable costs, as defined in A.R.S. § 12-332, incurred by the offeror after making the offer and prejudgment interest on unliquidated claims to accrue from the date of the offer. If the judgment includes an award of taxable costs or attorneys' fees, only those taxable costs and attorneys' fees determined by the court as having been reasonably incurred as of the date the offer was made shall be considered in determining if the judgment is more favorable than the offer. The determination whether a sanction should be imposed after an arbitration hearing shall be made by reference to the judgment ultimately entered, whether on the award itself pursuant to Rule 76(c) or after an appeal of the award pursuant to Rule 77.

¶28        Appellants contend the language of the defense offers of judgment violated Rule 68 in that they required Appellants to "secure releases or satisfactions for any and all valid liens arising from the subject accident, and the amounts offered were so much less than [Appellants'] medical bills, the conditional offers could not realistically have been accepted." It is certainly true that the offers of judgment were for sums substantially less than Appellants' claimed special damages; however, the defense in this case apparently took the position from the beginning that Appellants' damages, if any, were not casually related to this automobile accident. The offers of judgment were consistent with that position. Whether Appellants would "realistically" accept the offers is not a relevant consideration in imposing Rule 68 sanctions.

¶29        Appellants also assert the offers violated Rule 68 by requiring releases or other approvals by lienholders. A defendant with knowledge of existing medical or hospital liens who does not secure proof of those lienholders' acquiescence with any settlement (by agreeing to negotiate the lien, by signing a release, etc.) and proceeds to settle the case with the claimant is at risk for having to later satisfy that lien and, in effect, "pay twice." *See Midtown Medical Group, Inc. v. Farmers Ins. Group*, 235 Ariz. 593,

595, ¶ 9, 334 P.3d 1252, 1254 (App. 2014); *see also* A.R.S. § 33-934(A); *cf. Abbott v. Banner Health Network*, 236 Ariz. 436, 341 P.3d 478 (App. 2014). A failure to include such protective language in a settlement agreement or include such a condition in a proposed offer of judgment could give rise to a legal malpractice claim.

**¶30** While Appellants contend they could not realistically accept these offers (suggesting perhaps that such offers were illusory), the record is silent on any proof that Appellants sought to obtain waivers or reduction of any medical and hospital liens and that such efforts were rejected. Absent such evidence, we will not speculate about the legitimacy of these offers, which, on their face, comply with Rule 68.

**¶31** Appellants further argue that is impossible to know if they received a more favorable judgment than the offer, asserting that they could have filed for bankruptcy after the judgment in this case was entered, which likely would reduce or eliminate the medical liens. Appellants conclude "[h]aving the right to file bankruptcy, to reduce or eliminate medical liens, is a more favorable position than being contractually obligated to satisfy those liens in full." This argument is without merit. The consequences of bankruptcy are far-reaching and potentially financially devastating. To suggest Appellants would be in a "more favorable position" filing for bankruptcy than attempting to negotiate the liens and accept Furar's offers is not supported either by law or by common sense.

**¶32** Appellants also contend the sanction awards were not supported by adequate documentation and contained excessive expert fees. After the trial court had determined Rule 68 sanctions against Appellants were appropriate, it ordered Furar to produce documentary support for his expert fees. Contrary to Appellants' assertion that Furar failed to provide documentary evidence for his taxable costs, the trial court only ordered Furar to "submit a supplemental statement of costs with documentary evidence supporting the claim for expert witness fees." Furar then did so for Dr. Maric. Accordingly, Furar complied with the court's order and provided the requested documents to substantiate his claim for expert fees.

**¶33** Contrary to Appellants' argument, the trial court's imposition of sanctions was reasonable and did not contain excessive expert fees. The trial court did not abuse its discretion when it awarded costs associated with defense counsel's travel outside of Arizona to conduct depositions, but denied Appellants' similar request of costs for their counsel to travel to Arizona to conduct depositions. The litigation was initiated in Arizona, and Appellants' counsel, although apparently based in Las Vegas, is admitted

to practice in Arizona. The trial court was in the best position to evaluate whether, under the circumstances, the travel costs for Appellants' counsel should qualify as taxable costs. On this record, we cannot say that the trial court abused its discretion in the manner in which it allowed or disallowed travel costs.

¶34 Appellants finally contend they should not be responsible for paying expert fees from rescheduled trial settings because Appellants were not solely responsible for the rescheduling of those dates. Under Arizona law, "[a] sanction of 'reasonable expert witness fees' under Rule 68(d) is not limited to those fees incurred for trial testimony, but includes all 'reasonable expert witness fees' incurred after the offer of judgment was made." *Levy v. Alfaro*, 215 Ariz. 443, 445, ¶ 14, 160 P.3d 1201, 1203 (App. 2007). We find no abuse of the trial court's discretion when it included those rescheduled pre-trial costs in calculating the sanctions award.

## CONCLUSION

¶35 For the foregoing reasons, we affirm the jury's verdicts and trial court's order imposing Rule 68 sanctions against Appellants. Furar requests attorneys' fees on appeal pursuant to ARCAP 25. In our discretion, we deny Furar's request. Subject to compliance with ARCAP 21, we award Furar his taxable costs on appeal.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama